UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MICHAEL DUFFY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:19-cv-01189-SRC |
| | ) | |
| ANHEUSER-BUSCH COMPANIES, LLC, | ) ) | |
| | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Anheuser-Busch Companies, LLC's Motion to Dismiss Plaintiff's Complaint [18].

**I.    BACKGROUND**

Plaintiff Michael Duffy alleges A-B failed to pay benefits under a Pension Plan in amounts that are actuarially equivalent to a single-life annuity, in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA"). Basically, Duffy claims that A-B pays him less in pension benefits than ERISA requires it to pay him because A-B incorrectly calculates his pension benefits. In many ways, Duffy's case rests on a few assertions: 1) the longer a person's life expectancy, the more a pension plan has to pay the person; 2) life expectancies have increased over the last several decades; 3) A-B shortchanges retirees by using outdated, and therefore shorter, life expectancies. Duffy claims that by using a mortality table from 1984 to determine present-day life expectancies, A-B improperly decreases the amount it pays in various annuities under the Plan. More specifically, Duffy claims that A-B wrongfully reduced the present value of his annuity payments at the time of his retirement by $4,385.50.

1

Duffy brings this putative class action asserting three counts: (1) Declaratory and Equitable Relief pursuant to 29 U.S.C. § 1132(a)(3) for a violation of ERISA's anti-forfeiture clause, 29 U.S.C. § 1053(a); (2) Reformation of the Plan and Recovery of Benefits under the Reformed Plan pursuant to 29 U.S.C. § 1132(a)(1); and (3) Breach of Fiduciary Duty pursuant to 29 U.S.C. §§ 1104, 1132(a)(3). A-B moves to dismiss, essentially arguing that it uses reasonable actuarial assumptions permitted by law, and that Duffy fails to plead otherwise.

## II. FACTS

For purposes of this Motion, the Court accepts as true the following facts alleged in Duffy's Complaint. *Great Rivers Habitat Alliance v. Fed. Emergency Mgmt. Agency*, 615 F.3d 958, 988 (8th Cir. 2010). Duffy worked for Busch Entertainment Corporation from 1992 until 2009. He selected a joint-and-survivor annuity and started receiving retirement benefits under A-B's benefit plan on January 1, 2018, when he was 65. A-B is both the Plan Sponsor and Plan Administrator.

The Plan is an "employee pension benefit plan" and a defined benefit plan within the meaning of ERISA. The Plan includes five sub-plans, each of which calculate their benefits using the 1984 mortality table and either a 6.5% or 7% interest rate. The different sub-plans are not relevant to the present Motion; so, the Court addresses the Motion in the context of the sub-plan in which Duffy is participant, the Retirement Plan for Hourly Employees of Busch Entertainment Corporation Pension Plan.

Participants may receive their pension payments in various forms, including a single-life annuity, a joint-and-survivor annuity, or a certain-and-life annuity. The different annuities pay varying amounts of benefits depending on whether the annuity payments are based only on the participant's life expectancy, the life expectancies of the participant and the participant's spouse,

2

or that of the spouse alone. Under ERISA, plans convert single-life annuities to joint-and-survivor annuities or certain-and-life annuities. To convert a retiree's single-life annuity into a joint-and-survivor annuity or a certain-and-life annuity, the Plan must determine the present value of the total future benefits that the participant and the participant's spouse are expected to receive. The present values of the different annuities are compared to determine the conversion factor. An interest rate and a mortality table comprise the two main components of the present value calculation. The Plan uses an interest rate—i.e. a discount rate—to determine the present value of each future payment. In short, interest rates and life expectancies determine the amount of benefits a plan pays to a participant and/or spouse.

Plans use mortality tables to determine life expectancies of participants and spouses. Mortality tables predict how many people at any given age will die before attaining the next higher age; these predictions in turn determine the number of years a plan expects to pay benefits to a given retiree and/or spouse, and thus, the amount of benefits a plan actually pays. In short, the longer the life expectancy, the more in benefits a plan must pay.

Recent mortality tables base their rates on both the age of the individual and the year of birth. The Society of Actuaries, an independent actuarial group, publishes the mortality tables most widely used by defined benefits plans when calculating conversions from one form of annuity to another. The Society published mortality tables in 1971, 1983, 1984, 1994, 2000, and 2014 to account for changes in life expectancy. Since at least the 1980s, life expectancies in mortality tables have steadily improved, as shown in a chart in the Complaint. As an example of the impact of longer life expectancies on benefits, moving from the 2000 mortality table to the 2014 table would increase pension liabilities by 7%.

Under various Actuarial Standard of Practice, actuarial tables must be adjusted on an ongoing basis to reflect what actuaries call "improvements in mortality," or what others may call longer life expectancies. In the years between the publication of a new mortality table, mortality rates are projected to future years to account for expected increases in life expectancy.

To determine whether various annuities are actuarially equivalent, a plan must use the same mortality table (i.e. life expectancy) and interest rate to calculate the present values of those annuities. Changes to either variable—the life expectancy or interest rate—dramatically change the value of the annuity. Using a mortality table with shorter life expectancies creates lower present values of future benefits and decreases the amount of the monthly benefit under the joint-and-survivor annuity or certain-and-life annuity.

A-B's using the shorter life expectancies in the outdated 1984 table (known as UP-84) shortchanges participants and their spouses by artificially decreasing the amounts A-B pays. According to the Centers for Disease Control and Prevention, in 1984, a 65-year-old had an average life expectancy of 16.8 years. By 2010, a 65-year-old life expectancy increased 13% to 19.1-years, resulting in an additional 28 months of annuity payments. An average employee would be expected to receive, and an employer expected to pay, benefits for a substantially longer amount of time in 2010 than in 1984. Using the 1984 table decreases the values of the joint-and-survivor and certain-and-life annuities relative to the single-life annuity. If the Plan used updated mortality tables with longer, i.e. more realistic, life expectancies, A-B would have to pay retirees and their spouses more money.

A-B knew or should have known the 1984 table was outdated and that it produced lower monthly benefits for participants and beneficiaries. Under Generally Accepted Accounting Principles ("GAAP"), mortality assumptions "should represent the best estimate for that

assumption as of the current measurement date." A-B's parent company, Anheuser-Busch InBev SA/NA uses up-to-date actuarial assumptions when calculating pension plan costs in its independently-audited financial statements. InBev filed GAAP-compliant audited financial statements with the SEC for the year ending December 31, 2014; in those statements, InBev used "weighted average assumptions . . . in computing the benefit obligations of the company's significant plans at the balance sheet date." These assumptions included a life expectancy for a 65-year old male in the United States of 85 years, and a life expectancy for a 65-year old female in the United States of 88 years. These expectancies track the life expectancies in the Society of Actuaries' mortality table released in 2014.

Consequently, InBev used actuarial assumptions in financial reporting to report greater liability for benefits than A-B was paying out using the 1984 table. The 1984 table, a unisex table, assumes that 65-year old males and females will live only to age 80. In its audited financial statements, InBev assumed that men would live 5 years longer and women would live 8 years longer than A-B did in calculating the amount payable for any of the annuity benefit options. According to Duffy, A-B has no reasonable justification for knowingly using a shorter life expectancy in paying the annuities under the Plan.

A-B has used the same actuarial assumptions since at least 2001 to calculate joint-and-survivor and certain-and-life annuities. Had the Plan used reasonable actuarial assumptions, participants and beneficiaries would have received, and would continue to receive, more benefits—i.e. higher annuity payments—than they currently receive. Duffy alleges that all participants and beneficiaries who receive a joint-and-survivor or a certain-and-life annuity under the Plan are not receiving an actuarially-equivalent form of benefit because the present

value is not equal to that of the single life annuity that they earned. By using the 1984 table, A-B reduced the present value of Duffy's benefits at the time of his retirement by $4,385.50.

## III.  STANDARD

Under FRCP 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of FRCP 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." To meet this standard and to survive a FRCP 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010). Ordinarily, only the facts alleged in the complaint are considered for purposes of a motion to dismiss; however, materials attached to the complaint may also be considered in construing its sufficiency. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]" *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at

678; *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677-78.

**IV.     DISCUSSION**

In its Motion, A-B asserts five arguments. First, A-B argues ERISA grants employers wide latitude in selecting the actuarial assumptions used by their plans and does not require employers to use a particular interest rate or mortality table when calculating the actuarially-equivalent value of benefits. Second, A-B contends that Treasury Regulations authorize plans to describe benefits within a 10% range as approximately equal and the difference between the monthly benefit Duffy receives and the benefit he would like to receive falls within that range. Third, A-B claims that the law requires only that the net effect of the actuarial calculation not result in an unreasonable reduction in benefits and here, Duffy has not alleged, and cannot allege, that both the interest rate and mortality table used in this Plan result in an unreasonable reduction. Fourth, A-B asserts that even if only the mortality table assumptions were required to be reasonable, the 1984 table satisfies that standard because Treasury Regulations continue to specify the use of that table for performing various actuarial calculations. Finally, A-B argues that ERISA does not require a Plan to periodically update its actuarial assumptions. The Court addresses each argument.

**A.     Employers' Wide Latitude**

A-B argues that ERISA grants plan sponsors great latitude in selecting actuarial assumptions. It asserts that ERISA does not require any specific method for calculating a joint-and-survivor annuity, nor does it identify any specific mortality or interest-rate assumptions that

7

must be used. A-B claims that the statute's silence evidences Congress's intent to give defined benefit plans a degree of discretion in choosing actuarial assumptions. A-B further argues that Duffy cannot state a claim by merely alleging his benefits are less than they would have been under the Mandatory Lump Sum Assumptions provided by the Treasury and that he must state that the Plan's assumptions lead to a result that could not have been produced by any reasonable set of actuarial assumptions.

In his Complaint, Duffy does state that only reason the assumptions used by A-B in its Plan are unreasonable is because if A-B used the Treasury Assumptions, participants and beneficiaries would receive a higher benefit. He simply uses the Treasury Assumptions as an example to illustrate his argument. He also alleges that using the 1984 mortality table is unreasonable because it does not account for actual or anticipated improvements in life expectancy. Duffy alleges multiple specific reasons why A-B's use of the 1984 table fails to provide an actuarially-equivalent benefit.

A-B provides no citation to support its argument that Duffy must show that the benefit he receives could not have been produced by any reasonable set of actuarial assumptions, nor has the Court found any. A plaintiff need not rule out every possible defense in his complaint to survive a Rule 12(b)(6) motion. Fed. R. Civ. P. 8(a); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1276. To satisfy the pleading standards of Rule 8, Duffy must allege that the actuarial assumptions used by A-B are unreasonable, which he has done. At a later point in the litigation, A-B may assert that a different set of actuarial assumptions provides the same result, but A-B, not Duffy, must prove that argument.

Finally, regardless of any latitude or discretion ERISA may (or may not) provide to plan sponsors, Duffy sufficiently alleges that A-B uses unreasonable actuarial factors that result in

benefits that fail to meet ERISA's actuarially-equivalent requirement. Because he has done so, the Court will not dismiss his Complaint on this basis.

### B. 10% Range for Description of Benefits

Next, A-B argues that, according to the Complaint, Duffy's monthly annuity is equal to 97.4% of what it would be if calculated using the Treasury Assumptions that Congress has expressly found to be reasonable. Therefore, A-B claims that Duffy pleads himself out of court because a deviation of less than 3% falls well with the zone of reasonableness. In support, A-B cites to Treasury Regulations that govern what information a plan administrator must provide to a plan participant before the participant selects one of the various forms of annuities that the Plan offers (and that ERISA requires).

On this point, ERISA contains two schemes with which a plan sponsor such as A-B must comply – one about disclosure of information to plan participants, and the other about actual benefit payments to plan participants. To enable plan participants such as Duffy to make informed decisions in selecting their annuity, plan sponsors must disclose to participants the expected values of the various annuity options. These "disclosure regulations" are found at 26 C.F.R. 1.417(a)(3)-1 and allow plan sponsors to calculate the expected future values within a 10% range. In other words, when a plan sponsor calculates *estimated future values* of different benefits, ERISA allows the sponsor to calculate these *estimates* within a range. In contrast, when it comes to *payment* of benefits, ERISA does not give plan sponsors that latitude but instead requires the *payments* of the various benefits to be actuarially equivalent, i.e. precise. 26 C.F.R. § 1.401(a)-11(b)(2). These are the "benefits regulations."

The distinction between the latitude provided by the disclosure regulations and the precision required by the benefits regulations makes sense. When calculating projected amounts

that will be paid in the future, ERISA recognizes that the plan sponsor must make a host of assumptions about rates of return on investments and the like as they apply to the future value of one option versus another. *See*, e.g., 26 CFR 1.417(a)(3)-1(d)(2) (requiring the notice to provide "the amount of the optional form of benefit payable to a hypothetical participant at a representative range of ages[,] and "using reasonable assumptions for the age of the hypothetical participant's spouse[.]"). In contrast, when actually paying the benefits, ERISA requires as a matter of law that the plan sponsor must pay actuarially-equivalent amounts so that a participant does not receive less money than he would have had he chosen a different annuity option. A closer look at the regulations shows the difference.

Section 1.417(a)(3)-1 of the Treasury Regulations requires a plan to provide a written explanation to a participant about qualified joint-and-survivor annuities and qualified preretirement-survivor annuities. 26 C.F.R. § 1.417(a)(3)-1(a)(1). This allows a participant to compare options and choose the option best suited to him or her. The written explanation must include certain information regarding optional forms of benefit available to the participant, such as a description of the optional form of the benefit, the eligibility conditions, the financial effect of electing that form of benefit, and a description of the relative value of the optional benefit compared to the qualified joint-and-survivor annuity. 26 C.F.R. § 1.417(a)(3)-1(c)(1)(i)-(v).

When describing the relative value of an optional form of benefit compared to the value of the qualified joint-and-survivor annuity, the relative value "must be expressed to the participant in a manner that provides a meaningful comparison of the relative economic values of the two forms of benefit without the participant having to make calculations using interest or mortality assumptions." 26 C.F.R. § 1.417(a)(3)-1(c)(2)(i). "Two or more optional forms of benefit that have approximately the same value may be grouped for purposes of a required

10

numerical comparison." 26 C.F.R. § 1.417(a)(3)-1(c)(2)(iii)(A). The disclosure regulations provide that:

> The relative value of all optional forms of benefit that have an actuarial present value that is at least 95% of the actuarial present value of the QJSA [qualified joint-and-survivor annuity] and no greater than 105% of the actuarial present value of the QJSA is permitted to be described by stating that those optional forms of benefit are approximately equal in value to the QJSA, or that all of those forms of benefit and the QJSA are approximately equal in value.

26 C.F.R. § 1.417(a)(3)-1(c)(2)(iii)(C).

In contrast, when calculating the amount of benefits actually paid to a participant, the regulations require joint-and-survivor annuities to be the *actuarial equivalent* of the normal form of life annuity. 26 C.F.R. § 1.401(a)-11(b)(2). This ensures the participant receives the equivalent amount he or she earned under the plan, no matter the form of annuity under which he or she chooses to receive it. Therefore, the disclosure regulations governing written explanations of joint-and-survivor annuities do not, as a matter of law, make Duffy's benefit actuarially equivalent to other forms of benefit and do not make, as a matter of law, the actuarial assumptions A-B uses in calculating actuarial equivalence reasonable.

### C. Net Effect of the Actuarial Calculation

Next, A-B argues that ERISA does not require the reasonableness of each component of an actuarial calculation to be determined in isolation; it only requires that the actuarial adjustments be reasonable in the aggregate. A-B states that Duffy does not allege that application of the Plan's interest-rate and mortality factors *together* resulted in an unreasonable reduction. Therefore, A-B asserts there is nothing *per se* unreasonable about using the 1984 mortality table.

11

Duffy alleges that use of an outdated mortality table causes the Plan's actuarial assumptions to be unreasonable and not actuarially equivalent to a single-life annuity. For example, in paragraph 66, Duffy alleges:

> Because [the plans] use a grossly outdated, unreasonable mortality table throughout the relevant time period, the benefits paid to participants and beneficiaries who receive, and continue to receive, JSAs [joint-and-survivor annuities] and CLAs [certain-and-life annuities] are not actuarially equivalent to what they would have received if they had selected an SLA [single-life annuity]. . . Rather, the benefits payable under JSAs and CLAs are much lower that they should be.

A-B does not cite any authority requiring Duffy to challenge each component of an actuarial assumption, instead only citing to cases that state actuarial assumptions must be reasonable in the aggregate. Duffy includes factual allegations to support his argument that the actuarial assumption is unreasonable, because A-B uses the 1984 mortality table. Duffy's allegations satisfy the *Iqbal/Twombly* standard.

### D. The 1984 Table and Treasury Regulations

A-B asks the Court to determine that use of the 1984 mortality table is reasonable. A-B argues that the 1984 table remains a standard mortality table under Treasury regulations demonstrating that use of the 1984 is not *per se* unreasonable. To resolve A-B's Motion, the Court need not decide whether use of the 1984 table is *per se* reasonable or unreasonable. Instead, the Court determines that Duffy sufficiently pleads facts stating a claim that use of the 1984 table is unreasonable.

The Northern District of Texas addressed this precise issue about the Treasury Regulations and the 1984 table on a motion to dismiss in *Torres v. American Airlines, Inc.*, No. 4:18-cv-00983-O, 2019 WL 7756076 (N.D. Tex. Aug. 7, 2019). In *Torres*, the plaintiff alleged that use of the 1984 mortality table to determine an actuarially-equivalent benefit to a single-life annuity is unreasonable. *Id*. at *3. American Airlines, argued that "use of the UP-1984 mortality

12

table is 'reasonable as a matter of law because the [Treasury] regulations designate []1984 as a standard mortality table[,]'" pointing to the same regulation that A-B points to here, 26 C.F.R. § 1.401(a)(4)-3(f)(7). *Id*. at *6.

The *Torres* court held that this regulation implements provisions of the tax code and had no application to the case. *Id*. at *7. This Court agrees. This regulation concerns the nondiscrimination requirements of the Tax Code. 26 C.F.R. § 1.401(a)(4)-3(f)(7). The regulation provides:

> *For the purposes of this section*, an employee's accrued benefit includes the actuarial equivalent of prior distributions of accrued benefits from the plan to the employee if the years of service taken into account in determining the accrued benefits that were distributed continue to be taken into account under the plan for purposes of determining the employee's current accrued benefit. For purposes of this paragraph (f)(7), actuarial equivalence must be determined in a uniform manner for all employees using reasonable actuarial assumptions. A standard interest rate and a standard mortality table are among the assumptions considered reasonable for this purpose. Thus, for example, if an employees has commenced receipt of benefits in accordance with the minimum distribution requirements of Section 401(a)(9), and the plan reduces the employee's accrued benefit to take into account the amount of the distributions, the employee's accrued benefit for purposes of this section is restored to the value it would have had if the distributions had not occurred.

*Id*. (emphasis added).

Section 1.401(a)(4)-12 defines "standard mortality table" and includes the 1984 table. However, this section does not state that the 1984 table is a standard mortality table for all purposes. The section explicitly states, "Unless otherwise provided, the definitions in this section govern in applying the provisions of §§ 1.401(a)(4)-1 through 1.401(a)(4)-13." But, the actuarial-equivalence regulation, found at 26 C.F.R. § 1.401(a)-11, is not between § 1.401(a)(4)-1 and § 1.401(a)(4)-13, and is found in another section. The definitions applicable to the nondiscrimination regulation accordingly do not apply to the actuarial-equivalence regulation.

13

Furthermore, the nondiscrimination regulation prescribes the use of standard mortality tables to ensure that actuarial equivalence is "determined in a uniform manner for all employees" during testing for nondiscrimination. 26 C.F.R. § 1.401(a)(4)-3(f)(7). The nondiscrimination regulation does not address whether the mortality table used is up to date; it requires use of the same table in all calculations to make an apples-to-apples comparison of benefits for determining whether a plan discriminates against some (typically lower-compensated) employees. *See Smith v. Rockwell Automation, Inc.*, No. 19-C-0505, 2020 WL 620221 at *9 (E.D. Wisc. Feb. 10, 2020); *see also Torres*, 2019 WL 7756076 at * 7 (finding that 26 C.F.R. §§ 1.401(a)(4)-12 and 1.401(a)(4)-3(f)(7), which focus on whether one group of employees is improperly favored over another, have no application to 26 C.F.R. § 1.401(a)-11, which focuses on whether employees receive the full amount of benefits to which they are entitled).

A-B also cites to *Vinson & Elkins v. C.I.R.*, 99 T.C. 9 (1992) in support of its argument that use of the 1984 table is reasonable. It cites specifically to the following statement, "In fact, [respondent's expert], while testifying before the Court, acknowledged to make a reasonable mortality assumption, one need not use the most recent table available." 99 T.C. at 52. A-B leaves out the more enlightening statement: "A mortality table should be used only for the purpose which it is meant to fulfill. A preretirement benefit has different requirements than a postretirement annuity." *Id*. at 53. Here, the matter focuses on postretirement annuities not preretirement benefits. Thus, *Vinson* does not apply.

For these reasons, the Court finds that Duffy adequately pleads that use of the 1984 mortality table is unreasonable. The Court turns to A-B's final argument.

### E. Periodic Updates of Assumptions

Finally, A-B argues that ERISA does not require pension plans to periodically adjust their interest rate or mortality assumptions; therefore, the Court should reject Duffy's invitation to do so. A-B cites to *McCarthy v. Dun & Bradstreet Corporation*, in which the Second Circuit summarized the plaintiffs' argument as advocating for a "periodic adjustment of the rate used to determine actuarial equivalence." 482 F.3d 184, 206 (2d Cir. 2007). While the *McCarthy* court stated that "ERISA does not specifically require that retirement plans periodically adjust their actuarial interest rates[,]" it did not hold that a plan never has to update its actuarial assumptions and can continue to use unreasonable assumptions. *Id.* Duffy does not allege that the Plan at issue here must periodically update any of the actuarial assumptions. He argues, and sufficiently alleges, that the actuarial assumptions A-B uses to calculate alternative benefits are unreasonable and fail to conform to ERISA's actuarial-equivalence requirement. That is all he must do at the pleading stage.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Anheuser-Busch Companies, LLC's Motion to Dismiss Plaintiff's Complaint [18] is **DENIED**.

So Ordered this 27th day of March, 2020.

                                                        **STEPHEN R. CLARK**
                                                        **UNITED STATES DISTRICT JUDGE**